UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| QUEMEL TOME CUBEÑAS,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, *et al.*,<br><br>Respondents. | Case No. 2:26-cv-03653-TMC<br><br>ORDER GRANTING WRIT OF HABEAS CORPUS |

## I. INTRODUCTION AND BACKGROUND

Petitioner Quemel Tome Cubeñas is a citizen of Cuba who entered the United States as a child with his family after they fled political violence. In the past several decades, he has had multiple encounters with immigration and law enforcement authorities. *See* Dkt. 13. He was previously detained by Immigration and Customs Enforcement ("ICE") in September 2015, and was allegedly held for at least six months before being released under an order of supervision because his removal order to Cuba could not be executed. *Id.* ¶¶ 12–13; Dkt. 1 at 3. Mr. Tome Cubeñas was most recently re-detained on September 10, 2026, after serving a criminal sentence. Dkt. 13 ¶¶ 22–24. The parties agree that he has been detained for a cumulative period exceeding six months. *See* Dkt. 10 at 5.

According to Mr. Tome Cubeñas, after he was transferred to the Northwest ICE Processing Center ("NWIPC"), Deportation Officer Friete Subero informed him that Cuba would not accept him. *See* Dkt. 3-7 ¶¶ 12–14*;* Dkt. 15 ¶ 2; *supra* Section III. Officer Subero contends that Mr. Tome Cubeñas then "spontaneously" told him that he had family in Mexico and wished to be removed there. *See supra* Section III; Dkt. 13 ¶ 26. Mr. Tome Cubeñas has challenged that allegation, arguing that Officer Subero threatened to send him to the Democratic Republic of the Congo or to Mexico, which is why he told Officer Subero that he would go to the latter. Dkt. 3-7 ¶¶ 12–15; Dkt. 15 ¶¶ 3–4. After hearing testimony from both witnesses and Mr. Tome Cubeñas's brother, the Court finds that Mr. Tome Cubeñas's version is more probably true. On September 28, 2026, Mr. Tome Cubeñas filed a petition for a writ of habeas corpus, arguing that his continued detention violates the Immigration and Nationality Act ("INA") and the Due Process Clause. Dkt. 1. He also seeks injunctive relief, arguing that Respondents may not re-detain him or remove him to a third country without notice and a meaningful opportunity to respond. *Id.* Because his removal to Cuba, Mexico, or any other country is not reasonably foreseeable, the Court GRANTS Mr. Tome Cubeñas' petition for a writ of habeas and GRANTS IN PART and DENIES IN PART his request for injunctive relief.

## II. PROCDEDURAL HISTORY

On September 28, 2026, Mr. Tome Cubeñas petitioned for a writ of habeas corpus. Dkt. 1. He seeks four types of relief: (1) release; (2) an order prohibiting re-detention absent a showing before a neutral decisionmaker, by clear and convincing evidence and based on changed circumstances, that he is a flight risk or danger to the community; (3) an order prohibiting removal to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings; and (4) an order barring removal to any third country where he is likely to face imprisonment or harm. *Id.* at 4.

On October 13, Respondents opposed the petition. Dkt. 9. The government argues: (1) Mr. Tome Cubeñas is not entitled to release under *Zadvydas* because his detention has not become indefinite; (2) he is not entitled to a permanent injunction for any future re-detention because he lacks standing and because due process does not invariably require a pre-deprivation hearing; (3) his third-country removal claims are unripe because Respondents intend to remove him to Mexico at his request; and (4) his claims against third-country removal fail because of the stay issued in *Dept. of Homeland Sec. v. D.V.D.*, No. 26-426, --- S. Ct. ----, 2026 WL 2917860 (Sept. 29, 2026), and existing statutory and administrative procedure. *Id.* at 5–33. In support of its opposition, the government submitted a declaration from Officer Subero. Dkt. 13. Six days later, Mr. Tome Cubeñas filed a reply. Dkt. 14.

On October 26, the Court determined that there were material facts in dispute surrounding whether Mr. Tome Cubeñas' removal to Mexico is reasonably foreseeable and whether he was threatened with removal to the Democratic Republic of the Congo. Dkt. 17.

On November 19, the Court conducted an evidentiary hearing and heard arguments by both parties following testimony from Mr. Tome Cubeñas, his brother Odanil Tome, and Officer Subero. Dkt. 28

The habeas petition is now ripe for the Court's review. Having considered the full record and the parties' arguments, the Court GRANTS Mr. Tome Cubeñas' petition and GRANTS IN PART and DENIES IN PART his request for a permanent injunction.

## III. FACTUAL FINDINGS

Based on the testimony and evidence presented at the evidentiary hearing on November 19, 2026, the Court makes the following factual findings:

1. On September 27, 2026, two employees of the GEO Group at NWIPC took Mr. Tome Cubeñas from his cell to the intake area to meet with Officer Subero.

During their meeting, Officer Subero and Mr. Tome Cubeñas spoke in Spanish, a language in which they are both fluent.

2. Officer Subero told Mr. Tome Cubeñas that he could not be deported to Cuba because Cuba would not accept him.

3. According to Officer Subero, Mr. Tome Cubeñas then spontaneously asked if he could go to Mexico and provided an address for someone he said was a family member. Officer Subero testified that the possibility of removing Mr. Tome Cubeñas to the Democratic Republic of the Congo was never discussed.

4. According to Mr. Tome Cubeñas, after telling him that Cuba would not accept him, Officer Subero told him he had two choices: removal to Mexico or removal to the Democratic Republic of the Congo. Referring to removal to the Congo, Officer Subero told him, "we've done this before," and "haven't you seen the news?"

5. Mr. Tome Cubeñas testified that although he feared removal to either country, he said he would go to Mexico because he feared the Congo more. He explained that he fears being imprisoned, persecuted for his religion, or exposed to ebola in the Congo; in Mexico, he fears being targeted by the cartels for violence or kidnapping due to his appearance and accent.

6. Mr. Tome Cubeñas's brother testified that the same day, he received a phone call from Mr. Tome Cubeñas, who was very distressed and told him he had agreed to go to Mexico after being threatened with deportation to the Congo.

7. The next day, September 28, Mr. Tome Cubeñas filed a sworn declaration recounting this conversation. Dkt. 3-7. He filed a more detailed declaration with

his reply brief on October 19. Dkt. 15. In contrast, the declaration from Officer Subero on October 13 contains very little detail.

8. On balance, the Court concludes that Mr. Tome Cubeñas's version of the conversation is more likely true. He provided a more detailed account of the conversation that was consistent across his declarations from September 28 and October 19, as well as his testimony at the evidentiary hearing. The conversation is what prompted his filing of a habeas petition and a TRO motion the next day to prevent his imminent removal to Mexico. He related the conversation to his brother the same day while still upset. In contrast, Officer Subero's original declaration was sparse, and when examined at the hearing, acknowledged that much of Mr. Tome Cubeñas testimony about how the conversation occurred was true. Ultimately, Officer Subero's testimony that Mr. Tome Cubeñas spontaneously suggested he be removed to Mexico is not credible.

9. Additionally, Mr. Tome Cubeñas made clear that he would not agree to go to Mexico now, and Officer Subero testified that Mexico will only accept deportees who are not Mexican nationals if they agree to be sent there.

10. ICE has not yet taken steps toward removing Mr. Tome Cubeñas to any other country.

## IV. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

The re-detention and revocation of supervised release of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13(i). ICE may revoke a noncitizen's release (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen may be removed in the reasonably foreseeable future. *Id.* § 241.13(i)(1), (2).

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. Additionally, the federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To demonstrate that ongoing relief is needed, the party seeking a permanent injunction must establish "some cognizable

danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (alteration in original) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

## V. CONCLUSIONS OF LAW

### A. Mr. Tome Cubeñas is entitled to release under *Zadvydas*.

Mr. Tome Cubeñas argues that his detention is unlawful because there is not a significant likelihood of removal in the reasonably foreseeable future. Dkt. 1 at 8. The Court agrees.

Mr. Tome Cubeñas is a noncitizen who has been present in the United States for several decades. Dkts. 1, 13. He is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693. His continued detention is not "presumptively reasonable," *id.* at 701, because, as Respondents acknowledge, his cumulative period of detention has exceeded six months. Dkt. 11 at 5.[1] In 2015, an Immigration Judge ordered Mr. Tome Cubeñas' removal to Cuba, but he could not be removed due to "ERO's inability to execute removals to Cuba." Dkt. 13 ¶ 12. The testimony from Officer Subero that Cuba will not take him "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden thus shifts to the government to "respond with evidence sufficient to rebut that showing." *Id.* Respondents rely on Officer Subero's declaration detailing ICE's attempts to

---

[1] Mr. Tome Cubeñas proposes that the six-month "presumptively reasonable" period for detention ran continuously once his removal order was final, whether he was detained or not. Dkt. 1 at 8–10. The Court need not resolve that issue because Respondents concede he has been detained for more than six months. Dkt. 11 at 5.

remove Mr. Tome Cubeñas to Cuba or Mexico. Dkt. 13. Officer Subero avers that Mr. Tome Cubeñas expressed a desire to be removed to Mexico, was served with a Notice of Removal to Mexico, and may be removed there if all legal impediments are resolved. *Id.* ¶¶ 26–27. Officer Subero also testified before the Court that it was Mr. Tome Cubeñas who "spontaneously" asked whether he could go to Mexico. *See supra* Section III. As explained above, however, the Court finds credible Mr. Tome Cubeñas's explanation that he only agreed to go to Mexico when told he would otherwise be removed to the Democratic Republic of the Congo, and Mr. Tome Cubeñas will no longer agree to enter Mexico. *Id.* Without his consent, the parties agree that Mexico will not accept him, and his removal to Mexico is thus not reasonably foreseeable.

Because there is not a likelihood that Mr. Tome Cubeñas will be removed to Cuba, Mexico, or any other country in the reasonably foreseeable future, his detention is no longer permitted by the INA as construed in *Zadvydas*. *See* 533 U.S. at 699–700 0 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court."). Mr. Tome Cubeñas' detention is unlawful, and he must be released. *See, e.g.*, *Bui v. Scott et al.*, No. 2:25-cv-02268-TMC, 2025 WL 3706796 (W.D. Wash. Dec. 22, 2025) (allowing release upon a finding that removal was not reasonably foreseeable). The Court therefore GRANTS the petition for writ of habeas corpus. Dkt. 1.

**B. Re-detention Injunction.**

Mr. Tome Cubeñas seeks "an injunction against future re-detention without pre-deprivation notice and a hearing." Dkt. 1 at 11. The Court declines to grant such broad relief.

Mr. Tome Cubeñas identifies no binding authority holding that due process requires a pre-deprivation hearing before re-detention under 8 U.S.C. § 1231. Nor has he shown that the procedures provided by Section 1231 and the regulations at 8 C.F.R. § 241.13(i) are constitutionally inadequate as applied to him. Accordingly, this request for relief is DENIED.

**C. Third-Country Removal: Due Process.**

Along with release, Mr. Tome Cubeñas asks the Court for an injunction that restricts Respondents' ability to remove him to an unknown third country. Dkt. 1.

The INA dictates the countries to which a noncitizen may be removed after a final order of removal is issued. *Jama v. ICE*, 543 U.S. 335, 338–41 (2005); *Dzyuba v. Mukasey*, 540 F.3d 955, 956 (9th Cir. 2008) (per curiam). In order of priority, a noncitizen may be removed to (1) a country designated by the noncitizen; (2) a country of which the noncitizen is a subject, national, or citizen; or (3) a country with which the noncitizen has a lesser connection. 8 U.S.C. § 1231(b)(2). If the above options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama*, 543 U.S. at 341.

The government is prohibited from removing a person to a third country where they may be persecuted or tortured. Section 1231(b)(3)(A) provides for withholding of removal "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." And the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 113, prohibits removal of a noncitizen to a country where he is likely to be tortured. *See* 8 CFR §§ 208.16–208.17, 1208.16–1208.17; *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021). "Withholding of removal and CAT protection only restrict where the Government may remove a

noncitizen to, not whether the noncitizen is subject to removal." *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025). Thus, a noncitizen's removal order remains valid and enforceable, albeit not to the identified country or countries of risk. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(f); *Johnson*, 594 U.S. at 536; *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (explaining that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

Ninth Circuit precedent mandates notice and a meaningful opportunity to be heard prior to removal to a third country. *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999); *see also* *Ibarra-Perez v. United States*, 154 F.4th 989, 995, 997 (9th Cir. 2025). And "both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019). This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held. *Id.* at 1011; *Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014) ("[S]hould circumstances change such that Azerbaijan is the designated country of removal, the agency must provide Sadychov with notice and an opportunity to reopen his case for full adjudication of his claim of withholding of removal from Azerbaijan."). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016) (citing *Andriasian*, 180 F.3d at 1041); *El Himri v. Ashcroft*, 378 F.3d 932, 938 (9th Cir. 2004).

In light of the foregoing, Mr. Tome Cubeñas has met the requirements for injunctive relief. *See eBay*, 547 U.S. at 391. Respondents have stated that ICE's intention "is to remove Petitioner to Mexico ... if all legal impediments to removal are resolved." Dkt. 14 ¶ 27; Dkt. 11 at 21 (citing Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, Guidance Regarding Third Country Removals). At the evidentiary hearing, the government represented that if Mr. Tome Cubeñas will not agree to go to Mexico, it will seek to remove him to an unknown third country. And the government's briefing suggests it intends to follow only Department of Homeland Security guidance on executing third-country removals rather than Ninth Circuit precedent. *See* Dkt. 11 at 12–26. These facts show a "cognizable danger" of removal to a third country with insufficient due process. *Cummings*, 316 F.3d at 897. Remedies such as monetary damages are clearly "inadequate to compensate for that injury." *eBay*, 547 U.S. at 391. And "because the requested injunction seeks only to require Respondents to abide by established legal precedent, they incur no significant hardship and the 'public interest would not be disserved by a permanent injunction.'" *Francisco Lorenzo v. Bondi*, No. 2:25-CV-02660-LK, 2026 WL 237501, at *10 (W.D. Wash. Jan. 29, 2026) (quoting *eBay*, 547 U.S. at 391).

Respondents argue that Mr. Tome Cubeñas' third-country removal injunction request is barred by the Supreme Court's stay of the *D.V.D.* class judgment pending its decision in that case. Dkt. at 11 –15 (citing *Dep't of Homeland Sec. v. D.V.D.*, No. 26-426, 2026 WL 2917860 (2026)). But the questions presented in *D.V.D.*—which include "whether the district court had authority to enter classwide declaratory relief and APA vacatur," *id.*—do not allow this Court to infer that the stay abrogates binding Ninth Circuit precedent that governs individual cases. That precedent mandates notice and a meaningful opportunity to be heard in immigration court prior to removal to a third country. *Andriasian*, 180 F.3d at 1041; *see also Ibarra-Perez*, 154 F.4th at 1000. Absent clear guidance from the Supreme Court that those cases are no longer good law,

this Court must follow precedent. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 732 (W.D. Wash. Aug. 21, 2025), *Arenado-Borges v. Bondi*, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *5 (W.D. Wash. Dec. 19, 2025). Thus, the emergency docket order in *D.V.D.* does not preclude relief here. *See, e.g.*, *Francisco Lorenzo*, 2026 WL 237501, at *8.

For all of these reasons, the Court therefore GRANTS this request for injunctive relief, prohibiting Mr. Tome Cubeñas's removal to a third country without notice and meaningful opportunity to respond in compliance with the INA and due process in reopened removal proceedings. Dkt. 1 at 4.

Because Mr. Tome Cubeñas has not shown a likelihood of removal to any particular country, the Court declines to address his remaining arguments that removal to certain third countries amounts to unconstitutional punitive banishment. Nor has Mr. Tome Cubeñas shown any basis for this Court to preemptively restrict ICE's discretionary decisions about reasonable conditions of supervision.

## VI. CONCLUSION

For the reasons explained above, the Court ORDERS:

1. The petition for writ of habeas corpus (Dkt. 1) is GRANTED.

2. Respondents must RELEASE Petitioner Quemel Tome Cubeñas within ONE day of this Order, subject to reasonable conditions of supervision as set forth in 8 U.S.C. § 1231(a)(3) and its accompanying regulations.

3. Respondents must return to Petitioner any personal property, including any personal identification documents (other than a passport) and any employment authorization documents.

4. Respondents shall file a status report no later than November 27, 2026 confirming Petitioner's release in compliance with this Order.

5. Respondents, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them, are PROHIBITED from removing Petitioner to a country not listed in his removal order without affording him notice and a meaningful opportunity to be heard in reopened removal proceedings before an immigration judge.

Dated this 24th day of November, 2026.

Tiffany M. Cartwright
United States District Judge